

# NUMBER 13-22-00083-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE FORD MOTOR COMPANY

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Silva
### Memorandum Opinion by Justice Longoria[1]

By petition for writ of mandamus, relator Ford Motor Company (Ford) contends that the trial court[2] abused its discretion by requiring it "to admit or object to the authenticity of tens of thousands of documents produced during discovery" when the real party in

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so," but "[w]hen granting relief, the court must hand down an opinion as in any other case"); *see also id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number 2020CCV-60458-1 in the County Court at Law No. 1 of Nueces County, Texas, and the respondent is the Honorable Robert J. Vargas. *See id.* R. 52.2.

interest, Nancy Coll, "has not yet provided actual notice of the documents actually intended for use." This original proceeding concerns the construction of Texas Rule of Civil Procedure 193.7, which governs the self-authentication of documents produced in discovery. *See* TEX. R. CIV. P. 193.7. The underlying case is a personal injury product liability matter in which Coll was struck by a 2018 Ford F-250 when she was walking through the parking lot at Moore Plaza in Corpus Christi, Texas. Coll alleges, in part, that the Ford F-250 should have been equipped with a pedestrian detection system. We conditionally grant the petition for writ of mandamus.

## I.    BACKGROUND

On March 30, 2020, Coll filed her "Plaintiff's Original Petition and Requests for Disclosure" against Ford and other defendants, who are not parties to this original proceeding. The petition included the following section:

### RULE 193.7 NOTICE

11.1 Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff hereby gives actual notice to Defendants that any and all documents and materials produced in response to written discovery may be used as evidence in this case; and, that any such materials may be used as evidence against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the document and/or materials produced in discovery.

On April 23, 2020, Ford filed an "Objection to Rule 193.7 Notice." In that objection, Ford asserted that the notice provided by Coll constituted a "blanket, nonspecific attempt" to invoke Rule 193.7. Ford contended that this paragraph did not constitute "actual notice" as contemplated by Rule 193.7 and noted that it had not yet produced any discovery in the case. Ford further asserted:

2

In the spirit of this Notice, further, and out of caution, Ford responds to the substance of the "notice" by objecting to the authenticity of this bulk designation of all documents produced by Ford in discovery. As a group, the documents undoubtedly will contain many individual documents which Ford does not have sufficient knowledge to authenticate. Requiring Ford to review all documents without actual knowledge that they may be used in the litigation places an unnecessary burden on Ford that is not contemplated by Rule 193 and is counterproductive to the stated object of streamlining discovery and of encouraging production of complete discovery. Ford calls upon [Coll], then, to specifically identify all documents [she] intends to use at any proceeding to provide Ford actual knowledge that such documents may be used at trial and to allow Ford an opportunity to object as allowed under Rule 193.7.

Ford requested the trial court to grant its objection to Coll's "attempted bulk designation of documents to be used at future proceedings in this case and order [Coll] to instead identify specific documents produced by Ford that [Coll] actually anticipates using in the litigation."

On January 14, 2022, Coll filed a "Motion to Compel Regarding . . . [Ford's] Objections to [Coll's] Rule 193.7 Notice."[3] Coll argued that she provided the notice required by Rule 193.7 in her petition and "yet again" by correspondence sent to Ford "on January 4, 2022." She argued, in relevant part, that:

The purpose of Rule 193.7 is to streamline trial and to, if possible, alleviate the requirement of a party to authenticate each internal document produced by the other party. Rule 193.7 requires Ford to . . . specifically state the basis for its objection to the authenticity of a document that it has produced, and that it has notice it may be used in court, and that the objection must be made in good faith.

Instead, Ford has interposed a boilerplate objection to authenticating any of the documents it has produced, even though Plaintiff has provided notice that they will or may be used in Court.

---

[3] The motion to compel also addressed Ford's responses to Coll's second set of requests for production; however, the parties subsequently reached an agreement regarding that aspect of the discovery dispute and it is not before us in this original proceeding.

3

Coll requested the trial court overrule Ford's objections to her Rule 193.7 notice. Coll asserted that she had attempted to resolve this matter with Ford but had been unable to do so. As exhibits, Coll included a January 3, 2022 letter to Ford's counsel which discussed Ford's responses to Coll's requests for production, but did not address the Rule 193.7 issue, and a January 13, 2022 letter to Ford's counsel regarding its objections to the requests for production and asserting that counsel "would also like to visit about [Ford's] Objection to Rule 193.7 Notice." The record does not contain a letter dated January 4, 2022 as suggested in the body of Coll's motion to compel.

On February 8, 2022, the trial court held a non-evidentiary hearing on Coll's motion to compel. At the hearing, Ford's counsel stated:

> The scope of discovery is very broad. We have produced, as I've said, thousands and thousands of documents. It can't be that the rule streamlines a trial by requiring Ford to go and see whether it has authenticity objections to every single document that it's produced in discovery. That would take days, weeks, months. So[,] the way the rule and the comments to the rule are written is that a party has to specify what documents it intends to use, and that is what triggers Ford's obligation to then go and look at those particular documents and determine whether it has authenticity objections or not; and if it does, to promptly let [Coll] know.
>
> So[,] Ford's obligations under the rule have not yet been triggered because [Coll has] not yet specifically identified those documents that [she intends] to use at trial. Once [she does] so, whether through an exhibit list or some other letter that narrows down these thousands of documents to those that [she is] actually going to use, Ford, of course, will happily comply with that rule. At that point, Ford's obligation is triggered; but you can't use it in the way that [Coll is] using it, especially in a case like this that involves tens of thousands of documents. [She has] to specify what [she is] going to use; and then at that point, Ford's obligation is triggered. Ford looks at those— that subset of documents and lets [Coll] know whether there is an authenticity objection that needs to be dealt with.

4

So again, we are happy to comply with the rule. We just don't think it's been triggered yet.

In response, Coll's counsel asserted that the purpose of the rule was "to avoid what we are doing right now," and it is "to make it clear that when a party produces [a] document in discovery it authenticates it." Coll's counsel argued that:

> If [Ford's counsel] is correct, what we have to do is either give them the Bates numbers . . . of all the documents they've produced, which would provide no new information to them, or send them a list of the documents that we think are important in the case and that we are going to use well in advance of trial. I don't think they're entitled to that work product. I don't think they're entitled to produce documents, and then have us turn around and say, these are the documents that in our theory of the case that we are planning to put on are important; and thereby give you a glimpse into what our work product is, what our mental impressions are as lawyers.

> If on the other hand—[Ford's counsel] had suggested this to me. Why don't we simply prepare—you know, wait until we prepare exhibit lists and exchange those; and then Ford will go through our exhibit list of Ford documents and decide what is authentic and what is not. And of course, the obvious response to that is: Well then, if Ford says we've produced something and we don't stand by the authenticity, what is our remedy? We're a month out at trial and we're supposed to go out and take depositions of people to prove up these documents?

Coll's counsel further asserted that it would be unlikely for a party to produce a document from its own files, then contest its authentication. In response, Ford explained that its files contain documents from third parties such as the government, suppliers, vendors, and the media. Ford reiterated its position that Rule 193.7 is triggered by notice that the document "will be" used at trial, not "may be used" at trial. Ford's counsel further argued that:

> So[,] we don't want to waive all our authenticity objections. Chances are it won't . . . turn out to be a big deal. But I think the right course is to wait until we do exchange exhibit lists; and then at that point, more than likely, almost all the documents Ford will have no problem with. If there are a handful, it's

at that point that we can work with [Coll] to very quickly reach some sort of resolution on the use of the document.

The trial court took this matter under advisement, and the parties thereafter discussed continuing the March 7, 2022 trial setting.

By order signed on February 16, 2022, the trial court granted Coll's motion to compel regarding her Rule 193.7 notice and ordered Ford to "state which of the documents it admits to the authenticity of and which of the documents it does not, and why, within [thirty] days."

This original proceeding ensued. By one issue, Ford contends that the trial court abused its discretion, leaving Ford without an adequate remedy on appeal, by granting Coll's motion to compel and ordering Ford "to admit or object to the authenticity of tens of thousands of documents produced during discovery when [Coll] has not yet provided actual notice of the documents actually intended for use." This Court granted a stay of the trial court's order and requested Coll or any other interested party to file a response. Coll's response to the petition for writ of mandamus argues generally that (1) discovery orders are within the trial court's discretion, (2) Ford's suggested procedure "would result in the revelation of attorney work product," (3) interpreting Rule 193.7 as Ford suggests "renders the rule useless," (4) Ford lacks authority in support of its interpretation of the rule, and (5) Ford possesses an adequate remedy by appeal. Finally, Ford filed a reply in support of its petition for writ of mandamus.

## II.    MANDAMUS STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836,

6

840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy by appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts with disregard for guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d at 840. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *In re Essex Ins.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

### III.  RULES OF CONSTRUCTION

This original proceeding concerns the interpretation and construction of Rule 193.7 of the Texas Rules of Civil Procedure. When we interpret the rules of procedure, we "apply[ ] the same rules of construction that govern the interpretation of statutes." *In re Millwork*, 631 S.W.3d 706, 711 (Tex. 2021) (org. proceeding) (per curiam) (quoting *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding)); *see In re City of Dickinson*, 568 S.W.3d 642, 645 (Tex. 2019) (orig. proceeding); *In re Berry*, 578 S.W.3d 173, 178 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding). "Our review is de novo, and our primary objective is to give effect to the drafter's intent as expressed in the rule's language." *In re City of Dickinson*, 568 S.W.3d at 645–46. "[W]e

look first to the rule's language and construe it according to its plain meaning." *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015) (orig. proceeding); *see Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654–55 (Tex. 2020); *In re Berry*, 578 S.W.3d at 178. We consider the rules in context as part of a cohesive whole, rather than as isolated provisions. *In re City of Dickinson*, 568 S.W.3d at 646 (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). And, according to the rules themselves:

> The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

TEX. R. CIV. P. 1; *see Bethel*, 595 S.W.3d at 655; *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d at 569; *In re Berry*, 578 S.W.3d at 178.

## IV.    RULE 193.7

This original proceeding is based on Texas Rule of Civil Procedure 193.7, which provides:

> 193.7. Production of Documents Self-Authenticating
>
> A party's production of a document in response to written discovery authenticates the document for use against that party in any pretrial proceeding or at trial unless—within ten days or a longer or shorter time ordered by the court, after the producing party has actual notice that the document will be used—the party objects to the authenticity of the document, or any part of it, stating the specific basis for objection. An objection must be either on the record or in writing and must have a good faith factual and legal basis. An objection made to the authenticity of only part of a document does not affect the authenticity of the remainder. If objection is made, the party attempting to use the document should be given a reasonable opportunity to establish its authenticity.

TEX. R. CIV. P. 193.7. "The clear purpose of this rule is to alleviate the burden on a party receiving documents through discovery from proving the authenticity of those documents when they are used against the party who produced them." *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.). In accordance with the terms of the rule, production of a document authenticates that document "for use against that party," but not for use by that party. TEX. R. CIV. P. 193.7. "A party cannot authenticate a document for use in its own favor by merely producing it in response to a discovery request." *Blanche*, 74 S.W.3d at 452; *see Gunville v. Gonzales*, 508 S.W.3d 547, 562 (Tex. App.—El Paso 2016, no pet.). A produced document is thus authenticated against the producing party unless the producing party makes a specific objection, in writing or on the record, with a good faith factual and legal basis. *See* TEX. R. CIV. P. 193.7; *see also Choice Asset Mgmt., Inc. v. CIT Tech. Fin. Servs., Inc.*, No. 07-12-00304-CV, 2013 WL 5039340, at *2 (Tex. App.—Amarillo Sept. 11, 2013, no pet.) (mem. op.) (overruling a party's objection to summary judgment evidence as unauthenticated where the party had produced the documents in question but had not stated the specific basis for the objection and the objection was "bereft of allusion to any factual basis" for the objection). If an objection is made, the party attempting to use the document should be given a "reasonable opportunity" to establish its authenticity. TEX. R. CIV. P. 193.7.

The self-authentication provision of Rule 193 was added to the rule in 1999, and the comment regarding this addition provides:

> The self-authenticating provision is new. Authentication is, of course, but a condition precedent to admissibility and does not establish admissibility. *See* TEX. R. EVID. 901(a). The ten-day period allowed for objection to

9

authenticity (which period may be altered by the court in appropriate circumstances) does not run from the production of the material or information but from the party's actual awareness that the document will be used. To avoid complications at trial, a party may identify prior to trial the documents intended to be offered, thereby triggering the obligation to object to authenticity. A trial court may also order this procedure. An objection to authenticity must be made in good faith.

TEX. R. CIV. P. 193.7 cmt. 7; *see also Farrell v. Regent Care Ctr. of the Woodlands, Ltd. P'ship*, No. 09-15-00230-CV, 2016 WL 7478395, at *12 (Tex. App.—Beaumont Dec. 29, 2016, no pet.) (mem. op.) ("The mere fact that a document is self-authenticating under Rule 193.7 does not also mean that the document is relevant and does not dispose of the need to present evidence of any predicate fact upon which the relevance of the document depends.").

## V. ANALYSIS

As previously stated, Ford contends that the express text of Rule 193.7 and its purpose require us to conclude that Coll's notice was insufficient. The parties have not directed us to any authority, other than the rule itself, regarding the specificity of the "actual notice that the document will be used" in Rule 193.7. In *Merrell v. Wal-Mart Stores, Inc.*, the Texarkana Court of Appeals considered this issue, but did not rule on it. 276 S.W.3d 117, 130–31 (Tex. App.—Texarkana 2008), *rev'd on other grounds*, 313 S.W.3d 837 (Tex. 2010). There, the court considered the efficacy of a blanket statement that "the documents you produced in response to all parties' [request for production of documents] are authenticated pursuant to [Rule 193.7] and will be used by Plaintiff at any trial or hearing." *Id.* at 130. The producing party did not object to the specificity of the notice until

10

seventeen months had passed. *Id.* at 131. The court concluded, "Assuming, without deciding, the rule contains a specificity requirement, Wal–Mart has waived any error." *Id.*

**A.      Plain Meaning**

We turn our attention to the text of Rule 193.7 and examine its plain meaning. *See Bethel*, 595 S.W.3d at 654–55; *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d at 569; *In re Berry*, 578 S.W.3d at 178. Based on the express text, the authentication of a document is triggered by the production of the document. *See* TEX. R. CIV. P. 193.7 ("A party's production of a document in response to written discovery authenticates the document for use . . . ."). Thus, once produced, the document is presumed to be authenticated against that party. *See id.*

Thereafter, if another party provides "actual notice that the document will be used" against the producing party "in any pretrial proceeding or at trial," the producing party has the opportunity to object to the authenticity of the document in whole or in part. *See id.* "[F]rom a plain-meaning standpoint, the term 'notice,' in and of itself, refers to a 'warning' of something 'impending,' especially 'to allow preparations to be made.'" *Worsdale v. City of Killeen*, 578 S.W.3d 57, 70 (Tex. 2019) (quoting WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1326 (2d ed. 1996); NEW OXFORD AMERICAN DICTIONARY 1200 (3d ed. 2010)). And,

> 'Actual notice' literally means express or positive personal information or knowledge directly communicated to the person to be affected. In a more comprehensive sense, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known. In other words, whatever fairly puts a person upon inquiry is actual notice of the facts which would have been discovered by reasonable use of the means at hand.

11

*Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631–32 (Tex. 1950). If a producing party objects to the authenticity of a document that it produced, the objection must (1) state the "specific basis," (2) "have a good faith factual and legal basis," and (3) "be either on the record or in writing." TEX. R. CIV. P. 193.7. If an objection is made, the party attempting to use the document "should be given a reasonable opportunity to establish its authenticity." *Id.* We presume that the exact parameters of a "reasonable opportunity" will vary depending upon the facts and circumstances presented as it does in other contexts concerning reasonable periods. *Cf. Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) ("What constitutes a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented.").

Coll argues that she provided Ford with an appropriate Rule 193.7 notice providing that she planned to use Ford's documents at trial, and thus Ford bears the burden of identifying the documents in the scope of its production that it objects to on the basis of authenticity. As stated previously, Coll relies on the notice provision contained in her original petition stating that she "hereby gives actual notice to Defendants that any and all documents and materials produced in response to written discovery may be . . . used as evidence against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the document . . . ." We conclude that Coll's notice fails to comply with the plain meaning of the text of Rule 193.7, which requires "actual notice" that a document "will be" used. TEX. R. CIV. P. 193.7. The terms of Rule 193.7 do not contemplate a preemptive and prophylactic notice regarding

12

self-authentication of "any and all" documents produced that "may" be used at a pretrial hearing or at trial. We note that the use of the word may "creates discretionary authority or grants permission or a power." TEX. GOV'T CODE ANN. § 311.016(1).

## B.     Lack of Authority

Coll asserts that the lack of precedent on point defeats Ford's petition for writ of mandamus. Coll argues that Ford's petition and request for relief is "[u]nadorned by authority" and contends that Ford's inability to "point to authority to support its position is telling and warrants the denial of its requested relief." We appreciate Coll's concerns about the paucity of law on this topic but disagree with her conclusion that this precludes mandamus relief. "Even where the law is unsettled or the issue is one of first impression, a court may abuse its discretion if its legal decision is incorrect." *In re Silver*, 540 S.W.3d 530, 538 (Tex. 2018) (orig. proceeding); *see In re Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d 182, 185 (Tex. 2007) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135. Thus, the trial court may abuse its discretion even in the absence of authority supporting its position.

## C.     Work Product

Coll contends that "[a] rule designed to streamline the discovery process should not be converted to a sword that parties can wield during discovery to preview the opposing party's trial strategy and work product." According to Coll:

> [A] party should not have to give the opposition a list of the documents that they think are particularly significant, during discovery. That is simply revealing mental impressions of the lawyer—which constitutes attorney work product. Ford's interpretation of Rule 193.7, if allowed, would effectively turn Rule 193.7 into a weapon. Parties would routinely object to Rule 193.7 to force the non[]producing party to reveal its trial strategy. Work

13

product that reveals attorneys' mental impressions and strategy is protected from inquiry.

Coll thus argues that requiring her to specifically list the documents she intends to use at trial violates the attorney work product doctrine.

"The primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case." *In re Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d at 186 (quoting *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex. 1991) (orig. proceeding)); *see* TEX. R. CIV. P. 192.5(b); *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 554 (Tex. 1990) (orig. proceeding); *In re Cook*, 597 S.W.3d 589, 601–02 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding [mand. denied]). Work product includes "material prepared or mental impressions developed" by Coll and her counsel. TEX. R. CIV. P. 192.5(a)(1); *see In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d 635, 647 (Tex. App.—Houston [14th Dist.] 2021, orig. proceeding). "Core" work product is an attorney's work product containing the attorney's mental impressions, opinions, conclusions, or legal theories. TEX. R. CIV. P. 192.5(b)(1). "Core work product is sacrosanct and its protection impermeable." *In re Bexar Cnty. Crim. Dist. Atty's Off.*, 224 S.W.3d at 187–88; *see In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d at 647 (stating that core work product "is absolutely privileged and not discoverable").

Nevertheless, "[e]ven if made or prepared in anticipation of litigation or for trial," certain documents do not constitute work product which is protected from discovery. TEX. R. CIV. P. 192.5(c). As relevant to this case, "trial exhibits ordered disclosed under Rule 166 or Rule 190.4" are not work product. *Id.* R. 192.5(c)(2). Texas Rule of Civil Procedure

14

166, concerning pretrial conferences, allows the trial court to hold a pretrial conference to consider, inter alia, "[t]he marking and exchanging of all exhibits that any party may use at trial and stipulation to the authenticity and admissibility of exhibits to be used at trial," and "[w]ritten trial objections to the opposite party's exhibits, stating the basis for each objection." TEX. R. CIV. P. 166(l), (m); *see In re State ex rel. Skurka*, 512 S.W.3d 444, 455–56 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding) (rejecting a contention that designating specific phone calls that would be introduced at trial required the State to produce data protected by the work product doctrine). Rule 190.4 allows the trial court to "order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit." TEX. R. CIV. P. 190.4(a). Such plans may address "any issue concerning discovery or the matters listed in Rule 166." *Id.* R. 190.4(b).

We have previously addressed whether identifying exhibits that will be used at trial violated the work product doctrine. In *Skurka*, which was a criminal case, and thus not governed by the Texas Rules of Civil Procedure, the State produced recordings of more than 1,000 telephone calls made by the defendant while he was incarcerated. *See In re State ex rel. Skurka*, 512 S.W.3d at 447. The defendant's counsel requested the State to specify which recordings it intended to introduce into evidence at trial. *Id.* at 448. The State refused, and the trial court ultimately ordered the State to provide "an exhibit list" of the jail calls that it intended to use. *Id.* at 449. The State sought relief from this order by petition for writ of mandamus on grounds that, inter alia, "requiring the State to provide notice regarding what evidence it intends to introduce at trial violates the attorney work

15

product exception to discovery." *Id.* This Court "agree[d] that the selection of specific recordings will inevitably reveal some of the State's thought processes," but noted that "the trial court's order requires the mere designation of the calls by reference to their temporal placement on the compact disc without descriptive terms or summaries." *Id.* at 455. We concluded that "[t]he State's efforts at designating the jail calls will not create or enhance the substantive information provided and will not reveal the State's thoughts concerning the significance of these recordings or any strategic conclusions that the State may draw from them." *Id.*

Similarly, here, we conclude that requiring parties to provide "actual notice" that a document "will be used" at a pretrial hearing or at trial for purposes of authentication under Rule 193.7 does not infringe on the attorney work product doctrine. *See* Tex. R. Civ. P. 166, 190.4, 192.5(c).

## D.    Purpose and Efficacy

Coll contends that Ford's interpretation of Rule 193.7 ignores the reason for the rule, which "is to put the burden [regarding authentication] on the producing party." Coll further argues that Ford's interpretation of the rule, which would result in the parties exchanging exhibit lists near the time of trial, defeats the purpose of the rule because at that stage of the litigation, "it's far too late to depose someone to authenticate anything, if needed." Coll contends that "[t]his is the type of ambush near trial that self-authentication is designed to prevent and is precisely why Rule 193.7 exists."

We acknowledge Coll's concerns regarding the exigencies of authenticating documents when objections to those documents are made close to trial. However, Rule

16

193.7 expressly requires that objections must be premised on a good faith factual and legal basis. Further, Rule 193.7 clearly provides a "reasonable opportunity" to cure authenticity problems. We are confident that the trial court and parties can address any issues that might arise regarding authentication prior to trial, bearing in mind that Rule 193.7 is a tool designed to streamline the authentication process, and that it should neither be used as a shield nor as a sword.

**E.    Remedy by Appeal**

Coll asserts that Ford possesses an adequate remedy by appeal for any alleged error, and thus mandamus relief should be denied. As stated previously, we determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d at 25; *In re Essex Ins.*, 450 S.W.3d at 528; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Because this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). In evaluating the benefits and detriments of mandamus review, "we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. In this regard, Rule 193.7 creates shifting burdens and obligations between the parties. *See* TEX. R. CIV. P 193.7. The producing party authenticates the documents against itself through the act of production; the recipient provides actual notice that the documents will be used; the producing party determines whether to lodge an objection; and if it does so, the

17

recipient is afforded a reasonable opportunity to authenticate the document. *See id.* The trial court's order disrupts that balance in favor of the recipient, Coll, and thereby impaired Ford's procedural rights as the producing party under Rule 193.7. *See id.*

In addition to considering whether review by mandamus will preserve substantive and procedural rights, we consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *see In re Team Rocket, L.P.*, 256 S.W.3d at 262. This petition involves a legal issue—the construction of Rule 193.7—that is likely to recur, as demonstrated by the record in this case. Specifically, at the hearing on Coll's motion to compel, Ford asserted that it files objections to Rule 193.7 notices in original petitions "whenever it sees notices like that in pleadings," and Ford files "this objection in literally every case because literally every petition [it] get[s] has this same prophylactic notice." According to Ford, this issue had never before proceeded to an adversary hearing because "[e]very other opponent who has gotten [Ford's] objection has backed off on this because . . . [Ford is] correct." Further, Coll asserted her familiarity with the common practice of providing a Rule 193.7 notice in the original petition filed in a case, and the trial court likewise referenced having had the issue arise before it in previous matters.

We further consider whether mandamus will spare litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *see at In re Acad., Ltd.*, 625 S.W.3d at 35. Here, the trial court's order requires Ford to examine all documents

18

that it has produced in the case to determine their authenticity without regard to whether those documents will be used during pretrial hearings or at trial, rather than focusing its efforts on those documents that will actually be used. This is a waste of time and money, and the burden of the procedure outweighs any putative benefit. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *cf. In re CSX Corp.,* 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) (per curiam) (holding that a responding party lacks an adequate remedy by appeal where "'the order imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party'" (quoting *Walker*, 827 S.W.2d at 843)); *see, e.g.,* TEX. R. EVID. 102 (stating that one purpose of the rules of evidence is to "eliminate unjustifiable expense and delay"); TEX. R. EVID. 611(a)(2) (directing the trial court to "exercise reasonable control" over examining witnesses and presenting evidence in order to "avoid wasting time").

## F. Summary

We conclude that the trial court abused its discretion by requiring Ford to admit or object to the authenticity of the documents that it produced in the absence of actual notice that the documents would be used at trial as required by Texas Rule of Civil Procedure 193.7. *See* TEX. R. CIV. P. 193.7. We also determine that Ford lacks an adequate remedy by appeal to remedy this error. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. We sustain Ford's sole issue presented in this original proceeding.

## VI. CONCLUSION

The Court, having examined and fully considered Ford's petition for writ of mandamus, the response filed by Coll, and Ford's reply, is of the opinion that Ford has

19

met its burden to obtain mandamus relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to withdraw its February 16, 2022 order and to proceed in accordance with this memorandum opinion. Our writ will only issue if the trial court fails to comply.

NORA L. LONGORIA
Justice

Delivered and filed on the
26th day of August, 2022.

20